# APPENDIX.

AUSTIN TERM, 1883.

No. 2798.

HENRY HOUSTON *v.* THE STATE.

1. MURDER—MANSLAUGHTER—CHARGE OF THE COURT.—See the statement of the case for proof in a murder case *held* not to demand of the trial court a charge upon the law of manslaughter.
2. SAME—DRUNKENNESS—MITIGATION OF PENALTY.—Neither drunkenness nor temporary insanity produced by the recent voluntary use of ardent spirits will, under the laws of this State, constitute an excuse for crime, nor will intoxication mitigate either the degree or the penalty of the crime; but evidence of temporary insanity produced by such use of ardent spirits may be introduced by an accused in mitigation of the penalty attached to the offense for which he is on trial, and in cases of murder for the purpose of determining the degree of murder of which he is guilty. See the opinion for the distinction between this and Scott's case, 12 Texas Court of Appeals, 31.
3. MURDER—FACT CASE.—See the statement of the case for evidence *held* sufficient to support a conviction for murder of the second degree.

APPEAL from the District Court of Denton. Tried below before the Hon. C. C. Potter.

The conviction in this case was in the second degree for the murder of Sam Foster, in Denton county, Texas, on December 25, 1882. The penalty assessed against the appellant was a term of five years in the penitentiary.

Albert Bell, the brother-in-law of the defendant, was the first witness for the State. He testified that he was present and witnessed the killing of the deceased by the defendant on Christmas day, 1882. The killing occurred on the premises of the defendant in Denton county, Texas, about sun down on the day stated. When he received the fatal shot, the deceased was standing in the defendant's yard, about eight feet distant from the front door of the house. The defendant fired the fatal shot from the door, on the inside of the house, he being the only

person in the house at the time. After receiving the shot the deceased ran around the defendant's house, making a complete circle of it, and fell in the front yard, dying within a few moments. Witness, defendant and deceased were the only parties present when the fatal shot was fired.

Cross examined, the witness stated that the deceased and his wife, who lived in Tarrant county, were visiting the defendant and his family at the time of the tragedy—defendant and deceased being relations. Defendant and his wife had but a day or two before returned from a visit to the deceased and his family. Deceased and defendant went to the town of Lewisville, in Denton county, on the morning of the homicide. They returned late in the evening with the witness's father, who did not stop at defendant's house, but went on to his own house, about two hundred yards distant. Witness was at the defendant's house when the latter and the deceased returned from Lewisville. Defendant was very drunk when he got back—so drunk that he was unable to walk, and had to be assisted into the house by his wife, the witness's sister. The deceased was also under the influence of whisky, but not so drunk as the defendant. They had a bottle of whisky, which the witness took away from them. Defendant and deceased spent the thirty minutes succeeding their return inside of the defendant's house, at the end of which time, their wives having gone to the witness's father's house, witness and the deceased went outside of the house to a point in the yard about twelve feet south of the door. While standing at that point, the witness's back being towards the door, he heard the deceased say to the defendant: "Henry, put up that gun, you are too drunk to be handling a gun." Deceased then started towards the door to take the gun away from the defendant, and about the time he made his second step the gun fired. The witness turned immediately, and saw the defendant standing inside the door on the right hand side. The gun was then falling from his hands, muzzle foremost. The defendant was standing still. The deceased ran around the east side of the house and back to the front yard, where he fell. About this time the defendant's wife returned to the house, called the defendant into the yard, and explained to him what he had done. Defendant staggered from the house to where the deceased was lying on the ground, and began to weep, calling the deceased repeatedly by his given name. He was then too drunk to control his legs, and

witness pushed him away to prevent him from falling or staggering over the deceased. The defendant was then led back into the house and placed in a chair, and after a time he was removed to a bed, in which he was asleep when, about ten o'clock that night, the officers arrived and took him into custody. Defendant and deceased, to the positive knowledge of the witness, up to the very moment of the shooting were on the most friendly terms.

Cynthia Foster, the wife of the deceased, testified, for the State, that she was at the house of Sam Bell, a couple of hundred yards distant from the defendant's house, when the fatal shot was fired. She reached the scene of the homicide a few minutes later, and found her husband lying on the ground. Within a short time the defendant came out of his house and poured water over the prostrate man. He did not then appear to be drunk—not near so drunk as when, a short time before, he and deceased got back from Lewisville. On the Monday morning previous to the homicide, while the defendant was at the deceased's house near Fort Worth, and while the family was at breakfast, defendant told deceased that he intended to kill him. Witness thought that defendant looked very serious when he made the remark, but the deceased only laughed.

Cross examined, the witness said that at the time of the killing she and her husband, by invitation of the defendant, were visiting the defendant's house. During the several days preceding the homicide the association of the deceased and defendant was observed by the witness, and she thought it was very friendly indeed. They appeared to be very friendly when they started to Lewisville on the morning of the fatal day, and very friendly when they returned. Witness testified before the coroner's jury, upon the inquest over the body of her husband, that she knew of no ill feeling between her husband and the defendant. She was not asked, and said nothing about, the defendant's threat to kill the deceased, which, as stated above, he uttered at the deceased's house on the Monday preceding the killing.

The State closed.

Jack Bell testified, for the defense, that he lived near the defendant's house, in Denton county. He traveled from Lewisville home with the defendant and the deceased on the evening of the homicide, but did not stop at defendant's house, where deceased and his wife were then visiting. Defendant and deceased appeared to be on the very friendliest terms during the

ride home. Both drank plentifully of whisky, and both were drunk. The defendant was much the drunker of the two, and had to be assisted from his horse and helped into his house on his arrival. Witness reached the scene of the shooting soon after it occurred, and found the deceased lying on the ground. Defendant came out to where the parties were, and was then so drunk that he had to be taken back into the house and put to bed. He was in the bed asleep when the officers arrived. Witness woke him up and helped put him into the wagon in which he was taken to town, and knew that he was then very drunk.

The motion for new trial raised the question discussed in the opinion.

*Piner & Smith,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WILLSON, JUDGE. It can not be questioned but that the defendant committed the homicide. His defense is that it was accidental and unintentional, and that he was so drunk at the time that he was not responsible for the act. It is insisted that there are material errors in the charge of the court. We have examined the charge with care, comparing it with the evidence, and as a whole we can perceive no such error in it as demands a reversal of the judgment. It defines murder, and instructs the jury that under the evidence they can not convict the defendant of murder in the first degree. It does not define manslaughter or charge the law concerning that degree of homicide, nor do we think it was necessary under the facts of this case to do so. There was nothing in the evidence to demand or warrant a charge upon manslaughter. It instructs the jury fully, and we think correctly upon the law of murder in the second degree and negligent homicide.

In regard to the defense that the killing was accidental and unintentional, it tells the jury that "If the defendant did shoot and kill the deceased, but if the killing was accidental or unintentional, you will acquit him, or, if you have a reasonable doubt as to whether it was accidental or not, you will acquit him." This was presenting this phase of the defense in a most favorable manner for the defendant.

Upon the defense of drunkenness the charge of the court is silent. Defendant's counsel requested a charge as follows: ":Voluntary drunkenness furnishes no excuse or justification for crime. However, if you find that the defendant did take the life of Sam Foster by the means charged in the indictment, and if you find at the time of his so doing he was so drunk as not to know what he was doing, and was unable to form the criminal intent necessary to commit the crime charged, you will acquit him. But any amount of voluntary drunkenness which does not reach the status above indicated would not furnish any excuse or justification for the commission of the crime." This requested charge was refused by the court, and the action of the court refusing it was excepted to at the time by defendant, and is insisted upon as error for which the conviction should be set aside.

There was no error in refusing the charge requested. It is provided by statute "that intoxication nor temporary insanity of mind produced by the voluntary recent use of ardent spirits shall constitute any excuse in this State for the commission of crime, nor shall intoxication mitigate either the degree or penalty of the crime; but evidence of temporary insanity produced by such use of ardent spirits may be introduced by the defendant in any criminal prosecution in mitigation of the penalty attached to the offense for which he is being tried, and in cases of murder for the purpose of determining the degree of murder of which the defendant may be found guilty." (Acts 17th Leg., chap. 14, p. 9.) This statute is but the declaration of what the law was at the time of its enactment, as will be seen by reference to authorities. (3 Greenlf. Ev., secs. 6–148; 1 Bish. Cr. Law, secs. 397–416; Whart. on Hom., sec. 586 et seq.; Clark's Cr. Law, 14, note; Jeffries v. The State, 9 Texas Ct. App., 598; Gaitan v. The State, 11 Texas Ct. App., 544.)

We are aware that the charge requested and refused in this case is almost an exact copy of the one which was given in Scott v. The State, 12 Texas Court of Appeals, 31, and which was objected to by the defendant. In that case the charge was held to be correct, and properly so because it was favorable to the defendant, and he could not be heard to complain of it. There are some expressions in that opinion which might lead to the conclusion that, in the opinion of this court, there might be such a state of voluntary drunkenness as would excuse a

homicide committed by a person in such state.    We do not so understand either the statute or the common law.

It has never been held, that we are aware of, that voluntary drunkenness was a perfect defense in cases of homicide.    As far as the cases upon the subject have gone is to admit evidence of such drunkenness for the purpose of reducing murder from the first to the second degree—never as a complete defense.    In Colbath v. The State, 2 Texas Court of Appeals, 391, it is said, "Temporary insanity, produced immediately by intoxication, does not destroy responsibility, where the person, sane and responsible, made himself voluntarily intoxicated.    While intoxication per se is no defense to the fact of guilt, yet, when the question of intent and premeditation is concerned, evidence of it is material for the purpose of determining the precise degree. In all cases where the question is between murder in the first or murder in the second degree, the fact of drunkenness may be proved, to shed light upon the mental status of the offender, and thereby to enable the jury to determine whether or not the killing resulted from a deliberate and premeditated purpose." It is well settled that the mere fact of being drunk will not reduce a homicide from murder to manslaughter; it can only be regarded in determining between the two degrees of murder. (Farrer v. The State, 42 Texas, 265; Farrell v. The State, 43 Texas, 503; Gaitan v. The State, 11 Texas Ct. App., 544.)

We think, however, without further reference to authorities, that the statute we have quoted very plainly establishes the doctrine in this State that in no case will temporary insanity produced by the voluntary recent use of ardent spirits be allowed as a perfect defense; that is, such a defense that will acquit the accused of any offense committed while in such a state of mind.

We have examined other errors assigned, but we have found no error for which the judgment of conviction should be disturbed, and it is therefore affirmed.

*Affirmed.*